UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
PAULINE CABOULI,
Parent of Disabled Child

                Plaintiff,

       - against -

CHAPPAQUA CENTRAL SCHOOL
DISTRICT,

                Defendant.
--------------------------------------------------------x

05 CV 5961 (CLB)

***Memorandum and Order***

Brieant, J.

      Before this Court are motions for summary judgment (Doc. Nos. 4 & 16), filed by Plaintiff Cabouli and Defendant Chappaqua Central School District ("the District"), respectively. Doc. No. 4 was filed on October 17, 2005 and Doc. No. 16 was filed on November 8, 2005. The motions were heard and fully submitted to the Court on November 18, 2005.

      This action is brought pursuant to the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. § 1401 *et seq*. Familiarity on the part of the reader is assumed with respect to IDEA and "Individualized Education Plans" ("IEP").

      The following facts are based on the administrative record. Plaintiff's daughter, Olivia Marcontell ("Olivia"), was diagnosed in early childhood with Pervasive Developmental Disorder and Asperger's Syndrome. Socially, Olivia's behavior is immature, and she has a difficult time

1

interacting with peers. During class, Olivia exhibits inappropriate laughter, fiddles, and daydreams. Despite average to high cognitive abilities, she has severe language difficulties, particularly in the area of pragmatics, social language and peer interactions. Cognitively, Olivia has a history of rigidity and inflexibility, which affects her ability to transition between thoughts or activities. These facts are undisputed.

Olivia attended school in the District from kindergarten through the 4th grade, at Roaring Brook Elementary School. In 4th grade, Olivia began to experience difficulty more significantly. Olivia's "withdrawals" became more serious. During these withdrawals, Olivia looked catatonic and did not move. She confided to her mother that she was "dreaming of creatures [that were] fantastical." *Impartial Hearing Transcript, Sept. 21, 2004* at p. 470. Plaintiff was told by Olivia's doctor, Dr. Slater, that this was very serious; that Olivia was dealing with reality by retreating into fantasy. When Plaintiff expressed her concerns to the District, she was told that Olivia was "doing fine." *Id.* at 473. At the time, Olivia had been placed in a co-taught class at Roaring Brook of about 23 or 24 students. There was also a teacher's assistant, psychological services, and access to a special education teacher. The 2004-2005 IEP offers the same.

Plaintiff removed Olivia from the District and placed her in The Summit School ("Summit") in Queens, New York where she remained for the 5th, 6th, and 7th grades. Summit was the recommended special day school placement on Olivia's IEP for the 6th grade school year through the 8th grade school year. Summit was "successful in stabilizing Olivia and beginning

to give her confidence." *Id.* at 479.

For the 8th and 9th grades, Plaintiff removed her daughter from Summit. Olivia stated that she wanted to "move on" to a more academically challenging environment. *Id.* at 480. Plaintiff had discovered that The Eagle Hill School ("Eagle Hill"), of Greenwich, Connecticut, offered a program that focused on main-streaming children back into more traditional educational environments. Eagle Hill is a language based private school not funded by the New York State Education Department. Eagle Hill intended for Olivia to participate in this program for three years in order to receive the maximum benefit. Plaintiff placed Olivia at Eagle Hill. Olivia has been an active and enthusiastic member of the school community at Eagle Hill. The District continued to recommend special day school as the recommended program for the 8th grade and agreed to reimburse the Plaintiff for the tuition at Eagle Hill, not to exceed the tuition which would have been charged at Summit for that year.

For the 2004-2005 school year, Olivia's 9th grade year, the District suddenly changed its recommendation for special day school and recommended placement instead in a large Co-Teaching Support Program at Horace Greeley High School (Chappaqua's public high school). This change was said to have been based, in part, on a joint observation of Olivia at Eagle Hill by Martin Hughto and Dennis Cuddy while she was in a two student tutorial class: "[Olivia] had been on task, appropriately behaved and engaged in the lesson throughout the 40 minutes." District's Exhibit 5 at p. 2.

3

Plaintiff believed reasonably that the change in placement was not in the best interests of her daughter. Plaintiff appealed the terms of the changed IEP to an Independent Hearing Officer ("IHO") in August of 2004. The IHO found that the IEP was appropriate for Olivia. Plaintiff appealed the IHO's decision to the State Review Officer ("SRO"). The SRO also concluded the IEP was appropriate. During the 2004-2005 school year, Olivia remained enrolled at Eagle Hill School. Plaintiff paid the tuition for that year, and now seeks reimbursement, and a Judgment declaring that the Defendant's changed IEP for Olivia during the 2004-2005 school year denied her access to a free and appropriate public education, as required under the IDEA, and that the Eagle Hill School was a proper placement for her child during that year.

The District moves for summary judgment in its favor, upholding the changed IEP.

*Standard of Review*

As stated by Our Court of Appeals in *Lillbask ex rel. Mauclaire v. Connecticut Dept. of Education*, 397 F.3d 77, 83 (2d. Cir. 2005), "a motion for summary judgment in an IDEA case often triggers more than an inquiry into possible disputed issues of fact. The motion serves as a 'pragmatic procedural mechanism' for reviewing a state's compliance with the procedures set forth in IDEA and determining whether the challenged IEP is reasonably calculated to enable the child to receive educational benefits." *Warton v. New Fairfield Board of Educ.*, 217 F. Supp. 2d 261, 270 (D. Conn. 2002); *see Wall v. Mattituck-Cutchogue Sch. Dist.*, 945 F. Supp. 501, 508 & n.6 (E.D.N.Y. 1996) (analogizing use of Rule 56 motions to review administrative determinations in IDEA cases to the use of Rule 12(c) motions in administrative review of Social

Security determinations); *see also Capistrano Unified School District v. Wartenberg by & through Wartenberg,* 59 F.3d 884, 892 (9th Cir. 1995) ("Though the parties [in an IDEA action] may call the procedure 'a motion for summary judgment' . . ., the procedure is in substance an appeal from an administrative determination, not a summary judgment.") *See Lillbask ex rel. Mauclaire* at 83.

In such review, "it is critical to recall that IDEA's statutory scheme requires substantial deference to state administrative bodies on matters of educational policy." *Cerra v. Pawling Central School District*, 427 F.3d 186 at 13 (2d. Cir. 2005). Our Court of Appeals has cautioned that the judiciary "lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Walczak v. Florida Union Free School District*, 142 F.3d 119, 129 (2d Cir. 1998). In order to determine whether the IEP is defective, the Court examines the administrative record for "any objective evidence indicating whether the child is likely to make progress or regress under the proposed plan." *Walczak* at 130 (*quoting Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1121 (2d Cir. 1997).

Under IDEA, the burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief, whether that is the disabled child or the school district. *See Schaffer ex rel. Schaffer v. Weast*, 126 S.Ct. 528, 531 (2005).

*Discussion*

Even giving proper deference to the administrative proceedings in this case, I conclude

5

as a matter of law that Plaintiff has proved that the abruptly changed 2004-2005 IEP did not properly consider the objective evidence presented during the administrative hearing and does not ensure that Olivia will progress as required under IDEA, and not regress.

To determine whether parents who sue under IDEA to challenge a proposed IEP are entitled to private school tuition reimbursement, the Court follows a three step process. The first two steps focus on whether the "proposed IEP was inadequate to afford the child an appropriate public education." *Walczak* at 129. This Court examines whether the state has complied with the procedures set forth in the IDEA. *See Id.* Then, this Court considers whether the IEP developed through the Act's procedures "[is] 'reasonably calculated to enable the child to receive educational benefits.'" *Id*. (*quoting Board of Education of the Hendrick Hudson Central School District v. Rowley,* 458 U.S. 176, 206-7 (1982)). "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." *Rowley* at 207. If, however, the IEP is procedurally or substantively deficient, this Court proceeds to the third step and considers whether the private schooling obtained by the parents in lieu of accepting the District's Plan is appropriate to the child's needs. *See Walczak* at 129.

In developing "a particular child's IEP, a CSE is required to consider four factors: (1) academic achievement and learning characteristics; (2) social development; (3) physical development; (4)managerial behavioral needs." *Walczak* at 123 (*citing* N.Y. COMP. CODES R. & REGS. tit. 8 § 200.1 (kk)(2)(i)). It is undisputed that Olivia suffers from serious behavior disorders that affect her learning. Plaintiff has proved that the CSE did not sufficiently consider

6

the evidence presented regarding Olivia's social development issues when creating her 2004-2005 IEP. The CSE's finding that Olivia does not need a small class size is unsupported by the record.

There is no New York State Regulation that requires that Olivia should have been observed when the CSE was conducting her annual review. But, if she were observed, and that observation was relied on when formulating her 2004-2005 IEP, the observation must result in a fair portrayal of Olivia for the decision makers. Olivia's was not a fair observation. Olivia was observed briefly while in a two student tutorial, nothing more, and the written results were entirely supportive and affirmative. The administrative record offers no description or observation of Olivia's performance in a setting similar to the mainstream setting recommended by the IEP. The record shows only that when Olivia was in such a setting, at Roaring Brook, she frequently "shut down" and went into a catatonic-like state. This Hughto/Cuddy Report does not provide a reasonable indication of how Olivia might behave today, even in a small, self-contained class, or in a general education class of twenty-four students, her IEP recommended setting at Horace Greeley. The SRO concedes this point, yet failed to respond appropriately:

> While State Regulation requires that an observation of the student in a current educational placement be performed as part of a student's initial evaluation, there is no explicit requirement that a student be observed when, as is the case here, the CSE is conducting an annual review..nevertheless, I note that the evaluation of the student included an observation of the student at Eagle Hill and *the results of that observation were considered by the CSE in developing the student's program* for the 2004-2005 school year." See SRO decision at p. 6. (Emphasis added)

How that could be, is not shown in the administrative record. Reliance on the single brief

observation of Olivia by Hughto and Cuddy was unjustified and improper.

Dr. Herman M. Davidovicz, Ph.D., ABPP, retained by the School District, compiled a nine (9) page neuropsychological report in 2002, based on his evaluation of Olivia on April 15, 22, and 27th of that year. In relevant part, Dr. Davidovicz states: "In considering the current findings, it is felt that Olivia needs to continue in a small, highly-structured educational setting that is supportive and provides her with a sheltered environment. Thus her continued placement at the Summit School appears warranted." District's Exhibit 8 at p. 5.

On March 25, 2004, Dr. Alkalay, PH.D., also retained by the School District, evaluated Olivia and reported his findings in writing. Dr. Alkalay concluded, in relevant part: "There may be some social emotional issues which have an impact on Olivia's overall school functioning...Olivia explained to me that she gets very anxious both in academic and social situations." District's Exhibit 6 at p. 2. When giving testimony in the administrative proceeding, Dr. Alkalay was asked: "Based upon your review of the of Olivia's file, as well as your testing of Olivia, do you believe the IEP accurately reflects her social/emotional levels and needs?" *Impartial Hearing Transcript, Sept. 28, 2004* at 216. He responded, "Yes." *Id.* This response is disconcerting to say the least. It has never been disputed, in the last four years, that Olivia needs a small class size. Dr. Alkalay's own report states that Olivia's psychological problems are an issue for her with respect to her school environment. Yet, Dr. Alkalay testified that the IEP recommending Horace Greeley was appropriate for Olivia. Admittedly, he based this conclusion only on a single two and a half hour conversation with Olivia, and the brief Hughto/Cuddy observation. Dr. Alkalay also conceded, after he stated that the new IEP was

8

appropriate, that he was unaware, when he made his recommendation, that Olivia had suffered earlier from depression. Plaintiff demonstrated in the administrative record that Olivia has had extremely negative experiences in large, mainstream general education classes in the past. On the totality of the evidence, this Court concludes that there has not been appropriate consideration of the clear likelihood that Olivia will regress if her placement is changed as drastically as proposed.

The administrative record strongly, and objectively, reflects that Olivia has made considerable progress at Eagle Hill, that she is very happy there, and that she wants to continue to improve herself, and remain at least for the near future. The administrative record does not suggest in any way that Olivia's pervasive Developmental Disorder and Asperger's Syndrome are no longer an issue with respect to her education. Even Dr. Alkalay's written evaluation concedes the existence of serious issues that presently affect Olivia's learning ability. The District does not appear to dispute any of this, but for whatever reason, appears to be of the mind set that it is simply time for Olivia to move on. Removing Olivia from a thriving environment at Eagle Hill and placing her in the general, co-teaching student population at Horace Greeley, does not ensure progress and prevent regression as required under IDEA.

In *School Committee of the Town of Burlington v. Department of Education*, 471 U.S. 359 (1985), the Supreme Court held that the parents of a child with a disability could be reimbursed for tuition for private, unilateral placement if, as here, the District's IEP was inappropriate, and the private placement selected by the parents was proper pursuant to IDEA,

9

and equitable considerations supported the parents' claims. Plaintiff has met her burden of proof with respect to the inadequate IEP. This Court also concludes that Plaintiff has met her burden of proving that placement at Eagle Hill has met all of the student's needs and was in the least restrictive environment, as evidenced by the following: Olivia has made progress at Eagle Hill. *See Impartial Hearing Transcript, Sept. 28, 2004, pp.590-1*. Eagle Hill staff are able to intervene when Olivia has a problem, before she shuts down. *Id.* at pp. 584-5. Olivia has made gains academically, socially, and emotionally. *Id.* at 578, 597. Eagle Hill has a policy of facilitating transition back into the District's programs. *Id.* at 359-360, 481, 483. Olivia now attends larger classes than last year, a significant step toward transitioning back into mainstream schooling. *Id.* 433-434, 484, 508. None of this is seriously disputed.

## **Conclusion**

Plaintiff's motion for summary judgment (Doc. No. 4) is granted and Defendant's motion (Doc. No. 16) is denied. Settle a proposed final judgment on ten (10) days notice or waiver of notice. Plaintiff is also entitled to reasonable attorney's fees under 20 U.S.C. 1415(i)(3)(B), and shall serve and file the lodestar computation forthwith.

X

X

X

SO ORDERED.

Dated: White Plains, New York
December 20, 2005

                                                                             Charles L. Brieant, U.S.D.J.